AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Kentucky

Eastern District of Kentucky
**F I L E D**
May - 16 2025
Robert R. Carr
Clerk, U.S. District Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| KAMERON THOMAS | ) | Case No. |
| | ) | 2:25-MJ-2526-CJS |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of January 11, 2025 in the county of Boone in the Eastern District of Kentucky, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252(a)(2) | Distribution of a visual depiction of a minor engaged in sexually explicit conduct. |

This criminal complaint is based on these facts:

See attached affidavit.

☐ Continued on the attached sheet.

*Austin Ross by CJS w/ permission*
*Complainant's signature*

T.F.O. Austin Ross
*Printed name and title*

After verifying identity, Complainant swore to the Complaint by telephone, and it was signed for Complainant with consent, the process complying with Federal Criminal Rules 4.1 and 4(d), the Court having received the Complaint and having transmitted the Arrest Warrant, by email.

Date: May 16, 2025

Signed By:
*Candace J. Smith*
United States Magistrate Judge
*Judge's signature*

City and state: Covington, KY

Candace J. Smith, United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | |
|---|---|
| IN THE MATTER OF A CRIMINAL COMPLAINT FOR:<br><br>KAMERON THOMAS | Case No. 2:25-MJ-2526-CJS |

### AFFIDAVIT IN SUPPORT OF
### A CRIMINAL COMPLAINT

I, Austin Ross, being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Task for Officer (TFO) with the Federal Bureau of Investigation (FBI) and have been since February 2021. I am also a Detective with the Covington Police Department (CPD). I have been employed as a police officer since September 2005. Since January 2018, I have been a detective with CPD and assigned to the Domestic Abuse Response Team (DART). In that position, I investigate crimes against children. I have received specialized training to investigate these crimes and have investigated hundreds of cases involving child physical abuse, child sexual abuse, and online crimes against children.

2. As a Task Force Officer, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

3. The information contained in this affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and review of documents and records. This affidavit is made in support of an application for a criminal complaint charging Kameron Thomas ("THOMAS") with distributing a visual depiction of a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2), as well as an arrest warrant for THOMAS. Since this affidavit is being submitted

for the limited purpose of establishing probable cause for the complaint, I have not included each and every fact known to me regarding this investigation. I have set forth only the facts that I believe are necessary to establish probable cause.

## STATUTORY AUTHORITY

4.  THOMAS is alleged to have violated 18 U.S.C. § 2252(a)(2), distribution of a visual depiction of a minor engaged in sexually explicit conduct. The elements of the offense are 1) that the defendant knowingly distributed a visual depiction; 2) that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct; 3) that the visual depiction was of a minor engaging in sexually explicit conduct; 4) that the defendant knew that the visual depiction was of a minor engaging in sexually explicit conduct; and 5) that the visual depiction was distributed using any means or facility of interstate or foreign commerce.

## PROBABLE CAUSE

5.  As described more fully below, a law enforcement investigation revealed that there is probably cause to believe THOMAS knowingly utilized the BitTorrent peer-to-peer (P2P) file-sharing network from the premises known as ███████████████████ ███████████ (hereinafter, the "PREMISES") to distribute, as well as receive, possess and/or access, child pornography in violation of 18 U.S.C. § 2252.

6.  This case originated when a detective with the Campbell County Police Department (CCPD), conducted an online undercover investigation to identify individuals possessing and sharing child pornography on the Internet using the BitTorrent P2P network. The CCPD detective used a P2P file-sharing program that utilizes a single-source download process. Based upon training and experience, the detective was familiar with P2P file-sharing, specifically the operation of the BitTorrent network. The detective directed his focus to a computer using IP

address 74.128.164.234, port 6881.

7. On January 11, 2025, between 0628hrs and 0723 hours, the CCPD detective completed a single-source download of one file that the device using IP address 74.128.164.234, port 6881 was making available for others to download on the BitTorrent network. The file was downloaded directly from the device using IP address 74.128.164.234, port 6881. The detective determined that the file depicted a child under the age of eighteen years engaged in sexually explicit conduct that constitutes child pornography as defined by Title 18, U.S.C. § 2256. One of these files is described below:

> a. <u>Filename</u>: New opva Pedo 2012 PTHC Luna 3yo - VDP005.avi
>
> <u>Description</u>: This video depicts a toddler aged girl, clothed, with a pacifier in her mouth moving her hands up and down on the erect penis of a pubescent male. The male appears to attempt to have the child place his penis in her mouth, but the child does not. The child continues moving her hands on the erect penis until it appears as if the male ejaculates as the child is observed wiping something from her hands with the assistance of the male. The hash value of this file was submitted to the National Center for Missing and Exploited Children (NCMEC) and returned as being a previously identified child.

8. The CCPD detective determined that Charter Communication was the Internet service provider for IP address 74.128.164.234, port 6881, which geolocated to the Covington, Kentucky area. A subpoena was served on Charter Communications on March 14, 2025, and, in response, Charter Communications provided the following subscriber information for the IP address 74.128.164.234, port 6881 on the date and time of the download described above:

| | |
|---|---|
| Name: | Kameron Thomas |
| Address: | █████████████ |
| Lease start: | August 24, 2004 |
| Lease end: | March 17, 2025 |

9. Using databases and tools only available to law enforcement, I have also been able to determine that the IP address associated with the download by the CCPD detective has been associated with other Bit Torrent investigations involving the distribution of child sexual abuse material dating back as far as June 2024.

10. Information indicated that THOMAS resided at the PREMISES at all relevant times. I conducted an open-source search of the Boone County PVA website, which indicated the primary owner of the PREMISES is THOMAS. Further investigation revealed that THOMAS has a Kentucky driver's license, which lists ███████████████████████████████ as THOMAS's address. THOMAS's date of birth is ████████.

11. On or about May 16, 2025, FBI agents (including myself) executed a federal search warrant on the PREMISES. THOMAS was present at the time of execution on the residence. THOMAS confirmed that he was the owner of the PREMISES and that he regularly accessed visual depictions of minors engaged in sexually explicit conduct from the premises via the internet for his sexual satisfaction, including as recently as three days prior to execution of the search warrant. THOMAS further confirmed that he was familiar with Torrent files that are shared in the Bit Torrent network and has viewed them. THOMAS further advised that this was one of the ways he was able to access and view visual depictions of minors engaged in sexually explicit conduct, and that he had accessed visual depictions of minors as young as three years old engaged in sexually explicit conduct.

## **TERMS**

12.  Based on my training and experience, I use the following technical terms and definitions:

   a. An "Internet Protocol (IP) address" is a unique numeric address used by devices on the Internet. An IP address looks like a series of four numbers, each in the range of 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static, or long-term, IP addresses. Other computers have dynamic, or frequently changing, IP addresses.

   b. "Single-source download" applies to a file that is downloaded from one IP address only. In P2P software, users often download different parts of the same file from many other users at once in an attempt to gain the file quicker. A single-source download comes from one user/IP address instead.

   c. "Child Pornography" includes any visual depiction, including any photograph, film, video, picture, or computer or computer generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct where (A) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (B) the visual depiction was a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (C) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256(8).

   d. "Minor" means any person under the age of 18 years. *See* 18 U.S.C. § 2256(1).

   e. "Sexually explicit conduct" applies to visual depictions that involve the use of a minor, *see* 18 U.S.C. § 2256(8)(A), or that have been created, adapted, or modified to appear to depict an identifiable minor, *see* 18 U.S.C. § 2256(8)(C). In those contexts, the term refers to actual or simulated sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic areas of any person. *See* 18 U.S.C. § 2256(2)(A).

    f. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

## **CHARACTERISTICS OF CHILD PORNOGRAPHERS**

13. Based upon my knowledge, experience, and training in child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know that there are certain characteristics common to many individuals involved in such crimes:

    a. Those who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

    b. Those who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Such individuals oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

    c. Those who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes often possess and maintain copies of child-pornography material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home, or in some other secure location.

    d. Likewise, those who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area.

14. Those who produce, distribute, transport, receive, or possess child pornography,

or who attempt to commit these crimes also may correspond with others to share information and materials.

## BACKGROUND ON P2P FILE SHARING

15. P2P file sharing is a method of communication available to Internet users through the use of special software. Computers linked together through the Internet using this software from a network that allows for the sharing of digital files between users on the network. A user first obtains the P2P software, which can be downloaded from the Internet. In general, P2P software allows the user to set up file(s) on a computer to be shared with others running compatible P2P software. BitTorrent, one type of P2P software, sets up its searches by keywords typically on torrent websites. BitTorrent programs are typically free to download and used for the exchange of files between computer users.

16. The results of a keyword search are displayed to the user. The website does not contain the files being shared; it only shows the file referred to as a "torrent." The user then selects a .torrent file(s) from the results for download. This .torrent file contains instructions on how a user can download the file(s) referenced in the Torrent. The download of a file is achieved through a direct connection between the computer requesting the file and the computer(s) sharing the actual files (not the torrent file but the actual files referenced in the .torrent file using any BitTorrent client.)

17. For example, a person interested in obtaining child pornographic images would open the BitTorrent website on his/her computer and conduct a keyword search for files using a term such as "preteen sex." The results of the search are returned to the user's computer and displayed on the torrent site. The user selects a .torrent from the results displayed the file(s) he/she wants to download. Once the .torrent file is downloaded, it is used by a BitTorrent

program which the user had previously installed. The .torrent file is the set of instructions the program needs to find the files referenced in the .torrent file. The file(s) is downloaded directly from the computer or computers sharing the file. The downloaded file(s) is stored in the area previously designated by the user and/or the software. The downloaded file will remain until moved or deleted.

18.     One of the advantages of P2P file sharing is that multiple files may be downloaded in parallel. This means that the user can download more than one file at a time. In addition, a user may download parts of one file from more than one source computer at a time. For example, a BitTorrent user downloading an image file may receive parts of the image from multiple computers. The advantage of this is that it speeds up the time it takes to download the file.

19.     A P2P file transfer is assisted by reference to an Internet Protocol (IP) address. This address, expressed as four numbers separated by decimal points, is unique to a particular computer during an online session. The IP address provides a unique location, making it possible for data to be transferred between computers.

20.     The computer running the file sharing application, in this case a BitTorrent application, has an IP address assigned to it while it is on the internet. BitTorrent users can 7see the IP address of any computer system sharing files to them or receiving files from them. Investigators log the IP address which has sent them files or information regarding files being shared. Investigators can then search public records (ARIN) that are available on the internet to determine the internet service provider who has assigned that IP address. Based upon the IP address assigned to the computer sharing files, subscriber information can be obtained from the internet service provider.

## CONCLUSION

21.　Based on the above information, I submit that there is probable cause to believe that THOMAS distributed a visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2), in the Eastern District of Kentucky on or about January 11, 2025.

*Austin Ross by CJS w/ permission*
Austin Ross
Task Force Officer
Federal Bureau of Investigation

Sworn to before me by the Affiant via telephone and subscribed for the Affiant with his consent this 16th day of May, 2025.

Signed By:
**Candace J. Smith**
United States Magistrate Judge

# PENALTIES

Not less than 5 years and not more than 20 years imprisonment, not more than a $250,000 fine, and not less than 5 years and not more than a life term of supervised release.

**If prior felony child exploitation conviction:** not less than 15 years and not more than 40 years imprisonment, not more than a $250,000 fine, and not less than 5 years and not more than a life term of supervised release.

| | |
|---|---|
| **PLUS:** | Forfeiture of all listed property. |
| **PLUS:** | Mandatory special assessment of $100 per count. |
| | Additional mandatory special assessment of $5,000 per count, pursuant to 18 U.S.C. § 3014, for non-indigent Defendants convicted of certain offenses, including those in chapter 110. |
| | Pursuant to 18 U.S.C. §2259A, per count of no more than: |
| | (1) $17,000.00 if convicted of 18 U.S.C. §2252(a)(4) or §2252A(a)(5); |
| | (2) $35,000.00 if convicted of any other trafficking in child pornography offense as defined by §2259(c)(3), which includes offenses under 18 U.S.C. §§2251(d), 2252(a)(1) through (3), 2252A(a)(1) through (4), 2252A(g) (in cases in which the series of felony violations exclusively involves violations of sections 2251(d), 2252, 2252A(a)(1) through (5), or 2260(b)), or 2260(b); |
| | (3) $50,000.00 if convicted of child pornography production as defined by 18 U.S.C. §2259(c)(1), which includes offenses under 18 U.S.C. §2251(a) through (c), 2251A, 2252A(g) (in cases in which the series of felony violations involves at least 1 of the violations listed in this subsection), 2260(a) or any offense under chapter 109A or chapter 117 that involved the production of child pornography (as such term is defined in section 2256). |
| **PLUS:** | Restitution, if applicable. |